```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                        DISTRICT OF VERMONT

Robert Grundstein,                :
        Plaintiff,                :
                                  :
        v.                        :    File No. 1:11-cv-134-jgm
                                  :
State of Vermont c/o              :
Attorney General William          :
Sorrell, Judge Dennis             :
Pearson, Justice Skoglund,        :
Justice Johnson, Justice          :
Burgess, Justice Dooley,          :
Chief Justice Reiber,             :
        Defendants.               :
```

OPINION AND ORDER
(Docs. 3, 5, 6 and 7)

This case arises out of several years of state court litigation between plaintiff Robert Grundstein and his siblings regarding a family-owned camp in Eden, Vermont.  In the instant case, Grundstein is suing the State of Vermont and various members of the Vermont judiciary, claiming that rulings issued in the state court proceedings were erroneous and unconstitutional.  Defendants now move to dismiss, arguing that this Court lacks jurisdiction to review state court decisions.  Defendants also argue that Grundstein has failed to state a plausible claim for relief. Grundstein has stipulated to the dismissal of the State of Vermont. For the reasons set forth below, the motions to dismiss are GRANTED and this case is DISMISSED.

Factual Background

Grundstein and his three siblings have each inherited a one-fourth interest in a family camp in Eden, Vermont.  According to

state court documents, Grundstein began to assume effective control over the property in 2000, and litigation with his siblings ensued in the form of a partition action. On August 3, 2007, Vermont Superior Court Judge Dennis Pearson ordered the property be wholly assigned to Grundstein on the condition that he pay each of his siblings $25,000 no later than June 1, 2008. If the payments were not made by that date, the property was to be put up for sale. (Doc. 4-2 at 1.)

After Grundstein failed to make the payments, his siblings attempted to sell the property. However, according to a Vermont Supreme Court Entry Order, Grundstein "interfered" with the sale and forced his siblings to seek injunctive relief. Id. at 1-2. The Superior Court subsequently ordered Grundstein to vacate the property and not interfere with the sale. Id. Grundstein appealed, and the Vermont Supreme Court affirmed. Id.

Grundstein did not vacate the property, and was ultimately held in contempt. He again appealed the ruling, and the Vermont Supreme Court found his arguments on appeal to be without merit. (Doc. 1-5 at 2.) The court first rejected Grundstein's claim that the injunction had expired when the sale did not occur, noting "[t]he irony of this argument is that the closing did not occur because of defendant's refusal to obey the injunction." Id. The court also rejected Grundstein's due process arguments, finding he had "been afforded due process at every step through extensive

legal proceedings in which he has attempted to thwart [his siblings'] legal right to sell the property." Id.  Finally, the court found Grundstein's challenges to the underlying injunction and partition order were barred by principles of *res judicata*. Id. at 2-3.

On April 22, 2011, Judge Pearson vacated his own August 3, 2007 partition order and entered an Amended Final Judgment in favor of the siblings.  The Amended Final Judgment awarded "[a]ll right, title and interest in and to the subject real property" to the three siblings, provided, however, that Grundstein be awarded one fourth of the net sale proceeds from any sale of the property. (Doc. 1-4 at 1.)  The proceeds are to be awarded to Grundstein "only (a) after deduction for all reasonable and necessary fix-up and/or sale expenses, and (b) after deduction for all amounts owed by [Grundstein] to [his siblings] for attorney's fees . . . ." Id. In a separate written order, Judge Pearson explained the reasoning underlying the new Judgment, and in particular, the award of the siblings' attorney's fees on the basis of Grundstein's "conduct . . . to delay and frustrate" the sale of the property, and his "improper usage of . . . legal proceedings." Id. at 4-5.  The parties report Grundstein has appealed Judge Pearson's latest ruling to the Vermont Supreme Court, and that the appeal is currently pending. (Doc. 1 at 8.);(Doc. 4 at 3.)

Grundstein filed his Complaint in the instant case on May 20, 2011. The Complaint seeks permanent injunctive and declaratory relief "against an unconstitutional application of the Vermont partition statute, 12 VSA 179, and derivative violations under 42 USC 1983." (Doc. 1 at 1.) As to the "derivative violations," Grundstein claims the state courts have violated his substantive and procedural due process rights, as well as his right to equal protection. For relief, he asks this Court, among other things, to correct "language in a Supreme Court order which is contrary to the docket," for injunctive and declaratory relief "against all court orders by which he is restricted from entering and enjoying his own property," and "[f]or an order by which the only procedure for [his siblings] to realize their interest under the August 2007 order is foreclosure." Id. at 2, 17. In an addendum to the Complaint, he states the "injunction is a means to scrutinize the reasons for rulings which were contrary to law and fact." (Doc. 1-1 at 2.)

## Discussion

I. Legal Standard

Defendants first move to dismiss under Fed. R. Civ. P. 12(b)(1), claiming lack of subject matter jurisdiction. A motion to dismiss for lack of subject matter jurisdiction must be granted when the district court lacks the statutory or constitutional power to adjudicate the claim. Morrison v. Nat'l Austrl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008). When subject matter jurisdiction is

challenged, the plaintiff bears the burden of establishing a factual basis for jurisdiction.  <u>Aurecchione v. Schoolman Transp. Sys., Inc.</u>, 426 F.3d 635, 638 (2d Cir. 2005).  Determining subject matter jurisdiction is a "threshold inquiry," and should be addressed prior to any consideration of the Complaint's substantive merits.  <u>Arar v. Ashcroft</u>, 532 F.3d 157, 168 (2d Cir. 2008).

Although *pro se* filings are usually construed liberally, <u>see</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972), Grundstein is an attorney licensed in Washington state.  (Doc. 1 at 4.)  Consequently, he "cannot claim the special consideration which the courts customarily grant *pro se* parties."  <u>Harbulak v. Suffolk Cnty.</u>, 654 F.2d 194, 198 (2d Cir. 1981); <u>see also</u> <u>Holtz v. Rockefeller & Co., Inc.</u>, 258 F.3d 62, 82 n.4 (2d Cir. 2001).

II. <u>State of Vermont</u>

The Court first addresses the motion to dismiss filed by the State of Vermont.  The motion asserts, among other things, immunity under the Eleventh Amendment.  (Doc. 6.)  Grundstein has stipulated to the State's dismissal.  (Doc. 9.)  Accordingly, the State's motion to dismiss (Doc. 6) is GRANTED, and all claims against the "State of Vermont c/o Attorney General William Sorrell" are DISMISSED.

III. <u>Claims Against Judges</u>

    A. <u>Rooker-Feldman Doctrine</u>

With respect to the claims being brought against Judge Pearson and the five Justices of the Vermont Supreme Court, these Defendants first argue the <u>Rooker</u>-<u>Feldman</u> doctrine bars this Court from reviewing final state court judgments. Under the <u>Rooker</u>–<u>Feldman</u> doctrine, cases "brought by [a] state-court loser[ ] complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments" are barred in federal courts. <u>Exxon Mobil Corp. v. Saudi Basic Indus.</u>, 544 U.S. 280, 284 (2005). In <u>Hoblock v. Albany Cnty. Bd. of Elections</u>, the Second Circuit set forth the following four factors to determine whether the <u>Rooker</u>–<u>Feldman</u> doctrine applies: (1) plaintiff lost in state court; (2) plaintiff complains of an injury caused by the state court order; (3) plaintiff seeks a federal court's review of the state court's process and rejection of the state court's determinations; and (4) the state court determinations in question were rendered before the federal action was commenced. 422 F.3d 77, 85 (2d Cir. 2005).

In this case, Grundstein has lost repeatedly in state court. He was first ordered to either buy out his siblings or allow a sale, and was then barred from the property. Eventually, the state court denied him any rights to the property aside from sale

proceeds.  Grundstein appealed at least twice, and lost in both instances.  Therefore, the first requirement for application of the Rooker-Feldman doctrine has been satisfied.

With respect to injuries, Grundstein claims he has been excluded from "his own" property as a result of the state court's various rulings.  (Doc. 1 at 1.)  He also alleges the rulings have violated his constitutional rights, and he may be entitled to money damages.  Id. at 9, 17.  The Court therefore finds his claims satisfy the injury requirement.  See Hoblock, 422 F.3d at 87 (noting that if a plaintiff alleges in federal court that a state court order terminating his constitutional rights was unconstitutional, "he is complaining of an injury caused by the state judgment").

In response to the motions to dismiss, Grundstein argues that the Rooker-Feldman doctrine does not apply because he is now asserting claims that were never brought in the state courts.  (Doc. 8 at 8.)  However, the Second Circuit held in Hoblock that a plaintiff cannot avoid the application of Rooker-Feldman simply by "presenting in federal court a legal theory not raised in state court."  422 F.3d at 86; see also Swiatkowski v. Citibank, 745 F. Supp. 2d 150, 168 (E.D.N.Y. 2010).  As the Hoblock court explained:

> Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive

7

> due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal.  This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments . . . .
>
> Can a federal plaintiff avoid Rooker-Feldman simply by clever pleading — by alleging that actions taken pursuant to a court order violate his rights without ever challenging the court order itself?  Surely not.  In the child-custody example given above, if the state has taken custody of a child pursuant to a state judgment, the parent cannot escape Rooker-Feldman simply by alleging in federal court that he was injured by the state employees who took his child rather than by the judgment authorizing them to take the child.  The example shows that in some circumstances, federal suits that purport to complain of injury by individuals in reality complain of injury by state-court judgments.

422 F.2d at 87-88.

Here, Grundstein claims that he was injured by state court judges.  As in the Hoblock example, however, he cannot escape Rooker-Feldman by alleging that those judges, rather than their orders, were the causes of his alleged injuries.  Furthermore, it is plain that Grundstein is inviting federal court review of the state court judgments.  He asserts portions of the state court rulings were both factually inaccurate and unlawful, and they must therefore be "scrutinize[d]" by this Court.  In essence, he is asking this Court to review the state court judgments, strike certain factual statements, find that the rulings were

unconstitutional, and order different relief that would effectively vacate the state court orders.

Finally, each of the orders referenced in the Complaint was issued as of May 2011, when Grundstein commenced his case in this Court.  Accordingly, the fourth requirement is satisfied, and this Court has no subject matter jurisdiction to review the decisions rendered against Grundstein in the state courts.

    B.   <u>Younger Abstention</u>

To the extent Grundstein is seeking relief with respect to pending state court litigation, such as his appeal(s) of the Superior Court's April 2011 order, this Court again lacks subject matter jurisdiction.  In <u>Younger v. Harris</u>, 401 U.S. 37 (1971), the Supreme Court "emphasized [that] . . . federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings.  This principle of abstention is grounded in interrelated principles of comity and federalism." <u>Spargo v. N.Y. State Comm'n on Judicial Conduct</u>, 351 F.3d 65, 74 (2d Cir. 2003) (citations omitted).  <u>Younger</u> abstention is mandatory when three conditions are met: "(1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims."  <u>Diamond "D" Constr. Corp. v.</u>

McGowan, 282 F.3d 191, 198 (2d Cir. 2002) (citing Grieve v. Tamerin, 269 F.3d 149, 152 (2d Cir. 2001)).

If Grundstein's appeal to the Vermont Supreme Court is indeed pending, then there is an ongoing state proceeding.  As to an important state interest, not only is there such an interest in declaring real property rights in a partition action, see, e.g., Morpuro v. Inc. Village of Sag Harbor,  2007 WL 3375224, at *14 (E.D.N.Y. Oct. 11, 2007), but also in ensuring compliance with court orders.  See Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 12-13 (1987) (recognizing a state interest in "administering certain aspects of its judicial system"); Juidice v. Vail, 430 U.S. 327, 334 (1977); Hindu Temple Soc'y of N. Am. v. Supreme Court of the State of New York, 335 F. Supp. 2d 369, 372 (E.D.N.Y. 2004) (noting that "the state's interest has broadened to include a strong interest in enforcing its judicial orders and judgments").

The final requirement for abstention is that Grundstein be afforded an adequate opportunity for review of his constitutional claims.  That review may be performed by a state court.  See Spargo, 351 F.3d at 74 (finding that the Supreme Court has "unequivocal[ly] stated" that abstention is appropriate when the plaintiff has "an 'opportunity to raise and have timely decided by a competent state tribunal' the constitutional claims at issue in the federal suit") (quoting Middlesex Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 437 (1982)).

Grundstein is raising federal constitutional claims in his state court appeal.  (Doc. 4-3 at 4.)  As this Court recently noted, the Vermont state courts are courts of "general civil jurisdiction" that are "competent to adjudicate . . . federal claims."  McGRX, Inc. v. Vermont, 2011 WL 31022, at *15 (D. Vt. Jan. 5, 2011).  Accordingly, Grundstein is being provided adequate opportunities to raise his federal claims, and the state courts are the most appropriate venue for them.  See Spargo, 351 F.3d at 74 (Younger is not a "jurisdictional bar based on Article III requirements, but instead a prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity").

In Huffman v. Pursue, Ltd., 420 U.S. 592, 610 (1975), the Supreme Court vacated a district court ruling barring enforcement of a state court judgment.  In doing so, the Supreme Court warned that a state's judicial system would not be "fairly accorded the opportunity to resolve federal issues arising in its courts if a federal district court were permitted to substitute itself for the State's appellate courts."  Id. at 609, 95 S.Ct. 1200.  Accordingly, the Court held that the "Younger standards must be met to justify federal intervention in a state judicial proceeding as to which a losing litigant has not exhausted his state appellate remedies."  Id.  The Huffman Court also refused to entertain "the assumption that state judges will not be faithful to their

11

constitutional responsibilities." Id. at 611; see also Middlesex Cnty. Ethics Comm., 457 U.S. at 431 ("Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights.").

Here, by filing the current action, Grundstein "has essentially attempted to curtail or do an end run around ongoing state appellate proceedings." Glatzer v. Barone, 614 F. Supp. 2d 450, 459 (S.D.N.Y. 2009). He is seeking orders from a federal court that, while a state appeal is pending, would invalidate the orders under appeal and require specific relief that is contrary to the dictates of the state courts. The principles of comity underlying Younger prohibit such rulings, and bar this Court from exercising jurisdiction. Defendants' motions to dismiss (Docs. 3 and 5) for lack of subject matter jurisdiction are therefore GRANTED.[1]

---

[1] Younger abstention does not apply to claims for monetary damages. See Diamond "D" Constr. Corp., 282 F.3d at 196 n.2. The Complaint in this case does not set forth the basis for an award of monetary damages, and in the prayer for relief seeks such damages only "if available." (Doc. 1 at 17.) In a subsequent filing, Grundstein asserts that he "does not seek money damages." (Doc. 8 at 2.) In any event, absolute judicial immunity would bar a claim for damages again the Defendant judges in their individual capacities, see Mireles v. Waco, 502 U.S. 9, 11 (1991), while the Eleventh Amendment would bar any such claim against them in their official capacities. See Fulton v. Goord, 591 F.3d 37, 45 (2d Cir. 2009).

Conclusion

For the reasons set forth above, the motions to dismiss filed by Defendants Burgess, Dooley, Johnson, Skoglund, and Reiber (Doc. 3), Defendant Pearson (Doc. 5), and the State of Vermont (Doc. 6) are GRANTED, and this case is DISMISSED.  Grundstein's motion for a hearing (Doc. 7) is DENIED as moot.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 15th day of December, 2011.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge